# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TRUSTGARD INSURANCE CO.,** : <br> Plaintiff, : <br> : <br> v. : <br> : <br> **DANIEL JAMES JOHNSON,** *et al.*, : <br> Defendants. : | **CIVIL ACTION** <br><br> **NO. 12-2273** |

## MEMORANDUM OPINION

RUFE, J.                                                             JUNE 12, 2013

Plaintiff Trustgard Insurance Company ("Trustgard") seeks a declaration that pursuant to an insurance policy issued to Defendants J. Michael and Kim Johnson, it does not have a duty to defend or indemnify its named insured, Defendant Daniel James Johnson,[1] in an underlying civil action filed against him by Defendant Chester Heights Camp Meeting Association ("Chester Heights"), which arises out of an October 15, 2011 fire. Before the Court are cross-motions for summary judgment filed by Trustgard and Chester Heights.

## I.    FACTUAL BACKGROUND[2]

On the evening of October 15, 2011, Defendant Johnson, who at the time was a twenty-two year old student living with his parents, and several friends, including Defendant Elizabeth S. Hegadorn, were celebrating a friend's birthday at the home of Defendant John Markham Kasper; they sat outdoors around a small fire drinking beer and talking.[3] At about 11:30 p.m., Defendants Johnson, Kasper, and Hegadorn decided to explore the grounds of Chester Heights, a

---

[1] The Court will refer to Daniel James Johnson as "Johnson" throughout. When referring to his parents, Defendants Kim and J. Michael Johnson, the Court will use their full names.

[2] The material facts are undisputed.

[3] Johnson Dep. 6, Oct. 17, 2012 (Pl.'s Ex. I [Doc. No. 16-12], Def.'s Exs. 1.1 and 1.2 [Doc. No. 17-3 and 17-4]).

non-profit corporation, whose property consists of several acres with cottages and a Tabernacle, both of which are used by members of the Association for religious activities.[4]

When they arrived on the grounds, Johnson, Kasper, and Hegadorn entered several cottages, which were unlit.[5] In at least one of the cottages, Johnson took a candle and used it to find his way around.[6] Johnson also admits to taking an American flag from one of cottages, lighting it on fire with his lighter, and waiving it around in an effort to make an interesting image for Kasper to capture with his camera.[7] Before leaving the area by the cottages they had entered, Johnson lit a pile of leaves on fire while Kasper took additional pictures.[8]

Once this leaf fire had "mostly died down," Johnson, Kasper, and Hegadorn walked closer to the Tabernacle. Johnson lit another pile of leaves on fire; the pile was approximately 20 feet from the Tabernacle, and at their height the flames of the fire were three to five feet tall.[9] Johnson, Kasper, and Hegadorn remained on the grounds for about twenty more minutes, before leaving.[10] When the three friends decided to leave, Johnson observed that the fire by the Tabernacle "appeared to be safely dwindling out – there were only a couple of tiny flames (a few

---

[4] Johnson Dep. 8-9; Johnson Statement (Def.'s Ex. 2 [Doc. No. 17-5]; Amended Compl. ¶¶ 1-2. <u>Chester Heights Camp Meeting Ass'n v. Hegadorn</u>, No. 12-467 (Del. Co. Ct. Com. Pl. 2012) [Hereinafter "Underlying Complaint"].

[5] Johnson Dep. 14−15, Johnson Statement at 1.

[6] Johnson Dep. 15.

[7] Johnson Dep. 18, Johnson Statement at 1.

[8] Johnson Dep. 18−20; Pl.'s Ex. F [Doc. No. 16-9].

[9] Johnson Dep. 23−24.

[10] Johnson Dep. 25−26, Johnson Statement at 2.

inches high) left," and when he took "one last look" before they left, Johnson "saw [the fire] dissipating, and felt that it was safe to leave."[11] He did nothing, however, to extinguish the fire.[12]

Johnson, Kasper, and Hegadorn left the grounds, stopped for food at a local convenience store, and then returned to Kasper's house, where Johnson spent the night on the couch.[13] Johnson awoke around 11:30 a.m. the following morning and left Kasper's house for his parent's house shortly thereafter.[14] A few hours after returning to his parent's house, Johnson was reading the local news on the internet when he came across an article about a fire on the Chester Heights grounds.[15] He immediately informed his parents what he had done, contacted an attorney the following day, and voluntarily surrendered to authorities a few days later.[16]

### A. Criminal Charges

Johnson was interviewed by police and thereafter submitted a written statement dated October 24, 2011.[17] On November 30, 2011, a criminal complaint was filed in the Delaware County Court of Common Pleas charging Johnson with: Burglary;[18] Criminal Trespass;[19] Criminal Mischief;[20] Institutional Vandalism;[21] Reckless Burning;[22] Failure to Control/Report

---

[11] Johnson Statement at 2.

[12] Johnson Dep. 28.

[13] Johnson Dep. 29; Johnson Statement at 2.

[14] Johnson Dep. 30; Johnson Statement at 2.

[15] Johnson Dep. 30; Johnson Statement at 2.

[16] Johnson Dep. 30−31; Johnson Statement at 2.

[17] Johnson Statement at 2.

[18] 18 Pa C.S.A. § 3502(A).

[19] 18 Pa C.S.A. § 3503(A)(1)(i), (B)(1)(ii).

[20] 18 Pa C.S.A. § 3304(A)(1)(i).

Dangerous Fire;[23] Theft by Unlawful Taking;[24] Arson;[25] Recklessly Endangering Another Person;[26] Public/Private Mutilation of a Flag;[27] and Disorderly Conduct.[28] On July 2, 2012, upon motion by the Delaware County District Attorney, the court admitted Johnson into the Accelerated Rehabilitative Disposition (ARD) first offender program.[29] All charges, with the exception of one trespassing charge, were withdrawn "by stipulation between counsel," "but shall be reinstated in the event defendant is removed from the ARD program."[30]

### B.     Underlying Civil Action

On January 18, 2012, Chester Heights filed a civil complaint against Defendants Johnson, Kapser, and Hegadorn in the Delaware County, Pennsylvania Court of Common Pleas asserting claims of negligence (the "Underlying Action").[31] The underlying complaint alleges that on October 15, 2011, Johnson "entered the Camp Meeting Grounds after dark without permission."[32] It further alleges that while on camp grounds he "removed a candle and began

---

[21] 18 Pa C.S.A. § 3307(A)(1).

[22] 18 Pa C.S.A. § 3301(D)(1), (D)(2).

[23] 18 Pa C.S.A. § 3301(E)(2).

[24] 18 Pa C.S.A. § 3921(A).

[25] 18 Pa C.S.A. § 3301(C)(1).

[26] 18 Pa C.S.A. § 2705.

[27] 18 Pa C.S.A. § 2102(A)(4).

[28] 18 Pa C.S.A. § 5503(A)(4). See Johnson Criminal Compl. (Def.'s Ex. 3 [Doc. No. 17-6]); Court of Common Pleas of Delaware County Criminal Docket dated July 2, 2012 (Pl.'s Ex. D [Doc. No. 16-7]).

[29] See Def.'s Ex. 4 [Doc. No. 17-7].

[30] Id.

[31] Civil Action Number 12-467.

[32] Underlying Complaint, supra note 4, at ¶ 6.

lighting fires with a lighter, and then "lit leaves on fire in or near the Tabernacle building."[33] "[T]he embers from the fire at or near the Tabernacle Building caused the Tabernacle to ignite and burn" resulting in a total loss, and "[t]he fire in the Tabernacle then caused fire damage to three nearby cottages."[34] Although the initial complaint in the Underlying Action described Johnson's behavior as "reckless," the amended complaint does not include this qualification.[35]

### C. The Insurance Policy at Issue

Plaintiff Trustgard provided counsel to represent Johnson in the Underlying Action and thereafter, filed this declaratory judgment action pursuant to 28 U.S.C. § 2201, seeking a declaration that it does not have a duty to defend or indemnify Johnson in the Underlying Action. The insurance policy, # TH9915710, is a homeowner's policy with an effective policy period from August 22, 2011 to August 22, 2012.[36] Johnson is included as an insured under the Policy. The Policy provides, *inter alia*, that Trustgard

> will pay all sums, up to our limit of liability shown on the Declarations Page for this coverage, arising out of any one loss for which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage, caused by an occurrence covered by this policy. If a claim is made or suit is brought against the insured person for damages because of bodily injury or property damage caused by an occurrence to which coverage applies, we will defend the insured person at our expense.[37]

---

[33] Id. ¶ 7 (emphasis added).

[34] Id. ¶¶ 10, 11, 12 (incorrectly labeled ¶ 11).

[35] Compare Def.'s Ex. 5 ¶ 20 [Doc./No. 17-8] with Pl.'s Ex. A ¶ 17 [Doc. No. 16-4].

[36] Policy (Pl.'s Ex. G [Doc. No. 16-10]).

[37] Policy, Section II, Coverage E [Doc. No. 16-10 at 36].

The Policy defines occurrence as: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in bodily injury or property damage during the policy period."[38] The Policy excludes coverage for:

> Bodily injury or property damage expected or intended by any insured person[,] . . . includ[ing] bodily injury or property damage a. caused intentionally by or at the direction of an insured person; or b. which results from any occurrence caused by an intentional act of any insured person where the results are reasonably foreseeable.

(Intentional Acts Exclusion).[39] It also excludes "[b]odily injury or property damage arising from a criminal act or omission which is committed by, or at the direction of an insured person. This exclusion applies regardless of whether the insured person is actually charged or convicted of a crime" (Criminal Acts Exclusion).[40] Plaintiff argues that it has no duty to defend or indemnify Johnson because of these two exclusions.

## II. STANDARD OF REVIEW

Upon motion of a party, summary judgment is appropriate if "the materials in the record" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[41] Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."[42] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[43] A dispute about a material fact is

---

[38] Policy, Definitions ¶ 9.

[39] Policy, Section II, Personal Liability Protection Exclusions ¶ 7.

[40] Policy, Section II, Personal Liability Protection Exclusions ¶ 16.

[41] Fed. R. Civ. P. 56(a), (c)(1).

[42] Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).

6

"genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[44]

"On cross-motions for summary judgment, the court construes facts and draws inferences in favor of the party against whom the motion under consideration is made. The court may not, however, weigh the evidence or make credibility determinations as these tasks are left for the fact-finder."[45] If, after making all reasonable inferences in favor of the party against whom the motion under consideration is made, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[46]

## III. DISCUSSION

In a declaratory judgment action, the Court must "ascertain the intent of the parties as manifested by the terms used in the written insurance policy," to determine whether the insurer, here Trustgard, has a duty to defend and indemnify its insured, Daniel Johnson, in and for liability arising from the underlying civil action filed against him by Chester Heights.[47] To make this determination the Court is guided by traditional principles of contract interpretation, looking first to the language of the policy, which must be given effect when it is clear and unambiguous.[48] "[W]hen a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the

---

[43] See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (noting that substantive law will govern which facts are material and only facts affecting the outcome of the suit will preclude summary judgment).

[44] Id.

[45] Pichler v. UNITE, 542 F.3d 380, 386 (3d Cir. 2008) (internal quotation marks and citations omitted).

[46] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Wisniewski v. Johns–Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

[47] Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007).

[48] Id.

7

insurer, as the insurer drafts the policy and controls coverage."[49] "Courts must interpret insurance policy language according to 'what a reasonable person in the position of an insured would understand the words to mean.'"[50]

### A. The Duty to Defend and Indemnify Generally

"[A] carrier's duty to defend and indemnify an insured in a suit brought by a third party depend upon a determination of whether the third party's complaint [in the underlying action] triggers coverage."[51] "Under Pennsylvania law, the duty to defend is determined solely by the allegations contained within the four corners of the [underlying] complaint."[52] "[T]he complaint claiming damages must be compared to the policy and a determination made as to whether, if the allegations are sustained, the insurer would be required to pay resulting judgment. . . . [T]he language of the policy and the allegations of the complaint must be construed together to determine the insurer's obligation."[53]

"An insurer's duty to defend is a distinct obligation, different from and broader than its duty to indemnify."[54] While the duty to indemnify arises "only if it is established that the insured's damages are actually within the policy coverage,"[55] the duty to defend requires an

---

[49] Id.

[50] Toffler Assocs., Inc. v. Hartford Fire Ins. Co., 651 F. Supp. 2d 332, 343 (E.D. Pa. 2009) (quoting Lucker Mfg. v. Home Ins. Co., 23 F.3d 808, 814 (3d Cir. 1994)).

[51] Baumhammers, 938 A.2d at 290-91 (quoting Mut. Benefits Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999)).

[52] Travelers Prop. Cas. Co. of Am. v. Mericle, 486 F. App'x 233, 235 (3d Cir. 2012) (citing Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896−97 (Pa. 2006)).

[53] Gene's Rest., Inc. v. Nationwide Ins. Co., 548 A.2d 246, 246−47 (Pa. 1988) (omission in original).

[54] Erie Ins. Exch. v. Muff, 851 A.2d 919, 925 (Pa. Super. Ct. 2004) (internal quotation marks and citation omitted).

[55] Lucker Mfg. v. Home Ins. Co., 23 F.3d 808, 821 (3d Cir. 1994).

8

insurer to represent its insured in a suit brought by a third party even where the allegations are "groundless, false, or fraudulent."[56] "Since the insurer agrees to relieve the insured of the burden of defending even those suits which have no basis in fact, the obligation to defend arises whenever the complaint filed by the injured party *may potentially* come within the coverage of the policy."[57]

"[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint. . . . [T]o allow the manner in which the complainant frames the request for redress to control in a case such as this one would encourage litigation through the use of artful pleadings designed to avoid exclusions in liability insurance policies."[58] "Because the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend."[59]

### B. Criminal Acts Exclusion and the Duty to Defend

"Ordinarily in insurance coverage disputes an insured bears the initial burden to make a *prima facie* showing that a claim falls within the policy's grant of coverage, . . . [however,] the insurer [] bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insurer contends that it does."[60] Here, the parties do not dispute that Johnson is an insured under the policy, or that the underlying conduct occurred during the

---

[56] Penn-America Ins. Co. v. Peccadillos, Inc., 27 A.3d 259, 265 (Pa. Super. Ct. 2011) (internal quotation marks omitted) (emphasis added).

[57] Id.

[58] Haver, 725 A.2d at 745.

[59] Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 225 (3d Cir. 2005).

[60] State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009).

9

effective policy period, and Trustgard does not argue that the incident is not an occurrence as defined by the Policy. What is disputed is the applicability of the Criminal Acts Exclusion and other provisions of the Policy relating to coverage for intentional acts. Thus, it is Trustgard's burden to demonstrate that a policy exclusion excuses it from providing a defense.

The Policy specifically states that Trustgard will not cover "[b]odily injury or property damage arising from a criminal act or omission which is committed by, or at the direction of an insured person."[61] The question with respect to this provision is whether the underlying complaint alleges that the property damage here arose from Daniel Johnson's criminal acts.

While the Court recognizes that the underlying complaint asserts only negligence claims and uses the language "knew or should have known," which typically sounds in negligence, the Court "must look to the factual allegations and not the cause of action that is pled."[62] The Court finds that the underlying complaint describes property damage arising from Johnson's criminal activity: Johnson entered the grounds after dark "without permission" and thereafter began lighting fires near the Tabernacle and the cottages when he knew or should have known that such fires had the potential to damage the buildings.[63] Despite the Underlying Complaint's careful attempts to allege only negligence, the Underlying Complaint describes criminal activity. Additionally, although the initial complaint in the Underlying Action describes Johnson's behavior as "reckless," and the amended complaint does not include this qualification, the

---

[61] Policy, Section II-Exclusions ¶ 16.

[62] Mericle, 486 F. App'x at 236.

[63] Underlying Complaint, supra note 4, at ¶¶ 6, 7, 10; see also 18 Pa.C.S.A. § 3503(b)(1)(ii) ("(b) Defiant trespasser.--(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by: . . . (ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders."); 18 Pa. C.S.A. § 3301 ("(d) Reckless burning or exploding.--A person commits a felony of the third degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and thereby recklessly: (1) places an uninhabited building or unoccupied structure of another in danger of damage or destruction.").

10

amended complaint described reckless behavior nonetheless. In any event, it is the alleged behavior, not the label attached to it, that controls.[64]

Chester Heights suggests that because the property damage "arose from" Johnson's negligence in failing to properly extinguish the fires, rather than from any criminal conduct, the exclusion for coverage for property damage "arising from" *criminal conduct* does not apply. The Court disagrees. Under Pennsylvania law, "'arising out of' means causally connected with, not proximately caused by."[65] There is nothing in the Policy at issue here to suggest that the phrase "arising from" should be interpreted differently than the phrase "arising out of" as defined by Pennsylvania law. The Court finds that as used in the Criminal Acts Exclusion and consistent with the plain language of the Policy, the phrase "arising from" means causally connected to. Thus, if the underlying complaint alleges a causal link between Daniel Johnson's criminal acts and the property damage, it falls under the exclusion.[66]

The underlying complaint avers a direct causal link between Johnson's criminal acts and the property damage, alleging that Johnson entered the grounds without permission, began lighting piles of leaves on fire, and that a fire at or near the Tabernacle caused the Tabernacle to ignite and burn.[67] This causal link supports a finding that the property damage "arose from" Johnson's criminal acts within the meaning of the exclusion.

Although Johnson was charged with several crimes, all charges (except a charge for criminal trespass) were withdrawn when Johnson agreed to participate in an ARD program. This

---

[64] Underlying Complaint, supra note 4, at ¶¶ 6−7, 10−12 (incorrectly labeled ¶ 11) (alleging that the defendants trespassed on private property and began setting piles of leaves on fire in the vicinity of the Tabernacle and cottages, knowing that these fires "had the ability" to cause fire damage to these structures); see also Underlying Compl. ¶ 20.

[65] Mericle, 486 F. App'x at 237 (internal quotation marks and citation omitted).

[66] Mericle, 486 F. App'x at 238.

[67] Underlying Complaint, supra note 4, at ¶¶ 6-12.

fact does not change the Court's analysis with respect to the duty to defend because the relevant conduct is that which is alleged in the Underlying Complaint. Further, under the Policy, the "exclusion applies regardless of whether the insured person is actually charged with, or convicted of a crime."[68]

Chester Heights argues that the fact that all but one charge was withdrawn reflects the Commonwealth of Pennsylvania's assessment that Johnson's behavior was not criminal and asks the Court, based on this fact, to conclude that the Criminal Acts Exclusion does not bar coverage. However, the order dismissing the charges provides that the charges are withdrawn "but shall be reinstated in the event that the defendant [Johnson] is removed from the ARD program."[69] This language does not suggest that withdrawal was based on a merits assessment of the claims, but rather suggests that dismissal is contingent upon Johnson's compliance with the ARD program. This agreement does not affect the Court's analysis.[70]

Based on the language of the Policy at issue and facts as alleged in the Underlying Complaint, the Court finds that Trustgard does not have a duty to defend Johnson in the Underlying Action.

### C. The Duty to Indemnify

Because the Court finds that Trustgard does not have a duty to defend and because "there is no duty to indemnify if there is no duty to defend," the Court finds that Trustgard does not have a duty to indemnify Johnson for liability arising from the Underlying Action.[71]

---

[68] Policy, Section II-Exclusions ¶ 16.

[69] Court of Common Pleas July 2, 2012 Order, Ex. E to Pl.'s Mot. Summ. J. (Doc. No. 16-8).

[70] Because the Court finds that the Criminal Acts Exclusion bars coverage here, it need not reach the closer question of whether the Intentional Acts Exclusion bars coverage.

[71] See Sikirica, 416 F.3d at 225.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff does not have a duty to defend or indemnify Defendant Daniel James Johnson in the underlying civil action instituted against him by Defendant Chester Heights.  Accordingly, the Court will grant Plaintiff's Motion for Summary Judgment, deny Defendant Chester Heights' Motion, and enter declaratory judgment in favor of Plaintiff.

An appropriate Order follows.